**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID NGUYEN,<br><br>            Plaintiff,<br><br>vs.<br><br>RA MEDICAL SYSTEMS, INC., MARTIN COLOMBATTO, WILL MCGUIRE, RICHARD MEJIA, JR., SUSANNE L. MELINE, and JOAN STAFSLIEN,<br><br>            Defendants. | Case No.:  **'22CV1470 BEN MSB**<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, David Nguyen ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against Ra Medical Systems, Inc. ("Ra Medical Systems" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to merge the Company with Catheter Precision Inc., merger vehicles Rapid Merger Sub 1 and Rapid Merger Sub 2, LLC ("Merger Subs" and collectively with Parent, "Catheter Precision" and collectively with the

- 1 -
COMPLAINT

Company and the Board, the "Defendants"), as a result of an unfair process, and to enjoin an upcoming vote on a proposed all stock transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a September 9, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Catheter Precision will become an indirect wholly-owned subsidiary of Ra Medical systems. As a result of the Transaction, Catheter Precision public stockholders will receive an amount of stock equal to the quotient obtained by dividing (a) the aggregate outstanding principal amount of that Company Note divided by (b) seventy-five percent (75%) of the lower of the following: (x) the last closing sale price per share for Parent Common Stock prior to 4:00 p.m. (New York City time) on the last Trading Day prior to the Closing Date, as reported by Bloomberg; or (y) the average of the last closing sale price per share for Parent Common Stock prior to 4:00 p.m. (New York City time) on each of the five (5) consecutive full Trading Days ending on the last Trading Day immediately prior to such Closing Date. As a result, Ra Medical Systems common stockholders will see their interest in the Company significantly diluted.

3. Additionally, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits.

4. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on September 23, 2022 with the SEC in an effort to solicit Plaintiff to vote his Ra Medical Systems shares in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Ra Medical Systems and Catheter Precision, provided by the Company and

Catheter Precision to the Company's financial advisors Ladenburg Thalmann & Co. Inc. ("Ladenburg Thalmann") and Objective Valuation, LLC ("Objective") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Objective and provided to the Board. Accordingly, this action seeks to enjoin the Proposed Transaction.

5. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

6. Plaintiff is a citizen of California and, at all times relevant hereto, has been a Ra Medical Systems stockholder.

7. Defendant Ra Medical Systems is a leading digital insurance platform in the United States. Ra Medical Systems is incorporated under the laws of the State of Delaware and has its principal place of business at 2070 Las Palmas Drive Carlsbad, California 92011. Shares of Ra Medical Systems common stock are traded on the New York Stock Exchange under the symbol "RMED".

8. Defendant Martin Colombatto ("Colombatto") has been a director of the Company at all relevant times. In addition, Colombatto is the Company's Chairman of the Board of Directors.

9. Defendant Will McGuire ("McGuire") has been a Director of the Company at all relevant times. In addition, McGuire serves as the Company's Chief Executive Officer ("CEO").

10. Defendant Richard Mejia, Jr. ("Mejia, Jr.") has been a director of the Company at all relevant times.

11. Defendant Susanne L. Meline ("Meline") has been a director of the Company at all relevant times.

12. Defendant Joan Stafslien ("Stafslien") has been a director of the Company at all relevant times. In addition, Stafslien is the Company's Founder.

13. Defendants identified in ¶¶ 8 - 12 are collectively referred to as the "Individual Defendants."

14. Non-Party Catheter Precision, Inc. is an innovative U.S.-based medical device company bringing new solutions to market to improve the treatment of cardiac arrhythmias. It is focused on developing groundbreaking technology for electrophysiology procedures by collaborating with physicians and continuously advancing its products.

15. Non-Party Merger Subs are each a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

17. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Ra Medical Systems maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

19. Ra Medical Systems, Inc. is a medical device company that owns intellectual property related to an advanced excimer laser-based platform for use in the treatment of vascular immune-mediated inflammatory diseases. Its excimer laser and single-use catheter system,

Case 3:22-cv-01470-BAS-MSB   Document 1   Filed 09/29/22   PageID.5   Page 5 of 18

together referred to as the DABRA Excimer Laser System, is used as a tool in the treatment of peripheral artery disease.

20. The Company's most recent performance press release prior to the announcement of discussions with Catheter Precision, revealing positive results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid operational performance that would yield significant growth in the future. For example, in the May 16, 2022 Earnings Call announcing its 2022 Q1 financial results, the Company highlighted such milestones as an increase in enrollment to 107 subjects and opened one new clinical site in the Company's pivotal clinical trial to obtain an atherectomy indication from the U.S. Food and Drug Administration (FDA) for its DABRA excimer laser system. In addition, the company completed an underwritten public offering of common stock and warrants for net proceeds of approximately $9.7 million.

21. Speaking on these positive results, CEO Defendant McGuire commented on the Company's positive results as follows, "I'm encouraged by recent progress in our pivotal atherectomy clinical trial with 107 of the planned 125 subjects now enrolled, including 9 since our last update in late March," ….. "In addition, we continue to work with the FDA to support their review of the 510(k) application we submitted in February for our next generation DABRA 2.0 catheter."

22. These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Ra Medical Systems. Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

23. Despite this upward trajectory, the Individual Defendants have caused Ra Medical Systems to enter into the Proposed Transaction without providing requisite information to Ra Medical Systems stockholders such as Plaintiff.

*The Flawed Sales Process*

24. As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the

COMPLAINT

Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

25. First and foremost, the Preliminary Proxy Statement fails to adequately disclose the reasoning as to why the Board agreed to a transaction that provides no consideration to Company stockholders, and has the only effect of significantly diluting the value of Company stockholders' shares.

26. The Preliminary Proxy Statement fails to adequately disclose why the Board engaged two separate financial advisors. Despite engaging two advisors, the Preliminary Proxy Statement does not detail the scope of duties assigned to Ladenburg Thalmann, and further, fails to detail the amount of compensation paid, or still owed to Ladenburg Thalmann in connection with the Proposed Transaction.

27. Similarly, the Preliminary Proxy Statement fails to disclose the extent of compensation paid, or still owed to Objective in the course of performance of their duties with respect to the Proposed Transaction.

28. While the Preliminary Proxy Statement describes a "Transaction Committee" that was formed, it fails to detail the scope of duties within its purview, nor does the Preliminary Proxy disclose the Committee's membership. Additionally, the Preliminary Proxy Statement fails to provide adequate information regarding the specific powers of the Transaction Committee created to evaluate the Proposed Transaction and explore strategic alternatives, and specifically, if the Transaction committee was empowered to veto a potential transaction not in the best interest of shareholders.

29. In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Catheter Precision and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners,

including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

30.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

31.     On September 9, 2022, Ra Medical Systems and Catheter Precision issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **CARLSBAD, Calif.--(BUSINESS WIRE)--** Ra Medical Systems, Inc. (NYSE American: RMED) ("Ra Medical" or the "Company") announces it has entered into an Agreement and Plan of Merger (the "Definitive Merger Agreement") with privately held Catheter Precision, Inc. ("Catheter Precision"), a medical device and technology company focused in the field of cardiac electrophysiology. Under the terms of the agreement, Catheter Precision will become a wholly owned subsidiary of Ra Medical in a stock for stock reverse merger transaction (the "Merger"). If completed, the Merger will result in a combined publicly traded company that will focus on the cardiac electrophysiology market, one of the most robust and growing areas of medical devices. Medtech veteran David Jenkins, who has extensive experience growing medical device start-ups, will act as Chief Executive Officer of the combined company. Before taking the role as CEO of Catheter Precision, Mr. Jenkins was instrumental in operating several medical device start-ups, including Transneuronix, Inc., which was acquired by Medtronic plc (NYSE:MDT) for $267 million in July 2005, and EP MedSystems, Inc., which was acquired by St. Jude Medical for $95.7 million in July 2008.
>
> Catheter Precision has three product areas that it intends to pursue. Its lead product, named VIVO™ (an acronym for View Into Ventricular Onset), is an FDA-cleared and CE Mark product that utilizes non-invasive inputs to locate the origin of ventricular arrhythmias, and, through its use, the physician can identify patients for invasive catheter ablation, and with those patients, reduce the amount of time in the invasive procedure. Ventricular arrhythmias include ventricular tachyarrhythmias and premature ventricular arrhythmias, diseases which affect millions of patients that are not well treated today. While much past growth in the electrophysiology market has been for atrial fibrillation, Catheter Precision believes that ventricular arrhythmias represent a large growth area moving forward. It also intends to pursue a second generation of Amigo®, a robotic arm previously cleared by both FDA and CE, which serves as a catheter control device that can be remotely controlled outside of the procedure room. Catheter Precision has demonstrated that patient outcomes could potentially be enhanced by utilization of this device. Catheter Precision is working toward a third product release in the first half of 2023, which

is a vessel closure device that would assist in the closure of the insertion site of the percutaneous catheter or other device used within the body. It is estimated that the worldwide market for this closure assist device is over one million procedures per year.

"After undertaking a comprehensive process with external advisors to explore and evaluate a range of strategic options, our board and management team believe this transaction with Catheter Precision is the best strategic alternative for Ra Medical and represents an opportunity to create substantial value for our stockholders," said Will McGuire, Ra Medical CEO. "This business combination, if completed, will result in Ra Medical investors having an equity stake in a company that is focused on developing and commercializing novel technologies and solutions to improve the lives of patients with cardiac arrhythmias under the leadership of a world-class team with decades of medical device industry experience."

"We look forward to welcoming Ra Medical stockholders to our combined company following the completion of the proposed merger transaction," said Mr. Jenkins, Catheter Precision founder and CEO. "Catheter Precision is committed to producing cost-effective, user-friendly and technologically differentiated tools for use in percutaneous catheter procedures that physicians will embrace. Our VIVO non-invasive 3D imaging system enables physicians to identify the origin of arrhythmias pre-procedure, thereby streamlining workflow and reducing procedure time. We are also considering development opportunities for the Amigo remote catheter system, which incorporates the most modern technologies while remaining easy to learn and use, and we are looking forward to the launch of our vessel closure device, currently targeted for the first half of next year. We envision a significant opportunity afforded by this merger by providing access to the public capital markets."

*Potential Conflicts of Interest*

32. The breakdown of the benefits of the deal indicate that Ra Medical Systems insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Ra Medical Systems.

33. In addition, Company insiders, currently own company options, restricted stock units, and other equity awards, all of some of which will be subject to accelerated vesting upon the

consummation of the Proposed Transaction. The Preliminary Proxy Statement accounts for these awards as follows:

| Holder Name | Grant Type | Grant Date | Expiration Date | Exercise/ Purchase Price per Share ($) | Number of Total Shares Subject to Award | Number of Unvested Shares Subject to Award | Number of Vested Shares of Common Stock Underlying Award | Number of Shares Subject to Vested RSUs That Have Had Their Settlement Deferred | Number of Unvested Shares Subject to Award Expected to Accelerate Upon Effective Time of Merger | Total Value of Accelerated Vesting ($) |
|---|---|---|---|---|---|---|---|---|---|---|
| Jonathan Will McGuire | Option | 3/30/2020 | 3/30/2030 | $ 25.50 | 16,265 | 5,969 | 10,296 | N/A | 5,969 | $ — |
|  | Option | 3/30/2020 | 3/30/2030 | $ 25.50 | 1,735 | 1,156 | 579 | N/A | 1,156 | $ — |
|  | RSA | 11/17/2020 | N/A | $ — | 52,127 | 26,195 | 25,932 | N/A | 26,195 | $ 3,667.30 |
|  | RSA | 11/17/2020 | N/A | $ — | 17,375 | 8,732 | 8,643 | N/A | 8,732 | $ 1,222.48 |
|  | RSA | 3/30/2020 | N/A | $ — | 5,000 | 2,500 | 2,500 | N/A | 2,500 | $ 350.00 |
| Martin Colombatto | Option | 6/4/2018 | 6/4/2028 | $ 723.50 | 1,680 | — | 1,680 | N/A | — | $ — |
|  | Option | 1/6/2020 | 1/6/2030 | $ 29.50 | 2,000 | — | 2,000 | N/A | — | $ — |
| Richard Mejia | Option | 1/6/2020 | 1/6/2030 | $ 29.50 | 2,000 | — | 2,000 | N/A | — | $ — |
| Susanne Meline | RSU | 2/3/2021 | N/A | $ — | 4,000 | 2,666 | 1,334 | — | 2,666 | $ 373.24 |
| Joan Stafslien | RSU | 4/27/20 | N/A | $ — | 1,000 | 333 | 667 | — | 333 | $ 46.62 |

34. The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

35. Thus, while the Proposed Transaction is not in the best interests of Ra Medical Systems, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors

*The Materially Misleading and/or Incomplete Preliminary Proxy Statement*

36. On September 23, 2022, the Ra Medical Systems Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

37. Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy Statement fails to disclose:

a. Adequate information as to why the Board agreed to a transaction that provides no consideration to Company stockholders, and has the only effect of significantly diluting the value of Company stockholders' shares;

b. Adequate information as to why the Board engaged two separate financial advisors;

c. Adequate information regarding the scope of duties assigned to Ladenburg Thalmann in connection with the Proposed Transaction;

d. Adequate disclosure as to the compensation paid, or still owed, to Ladenburg Thalmann and Objective in connection with the Proposed Transaction;

e. Adequate information regarding the membership, duties, and the specific powers of the Transaction Committee, including if the Transaction Committee was empowered to veto a potential transaction not in the best interests of shareholders;

f.  Whether the confidentiality agreements entered into by the Company with Catheter Precision differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

g.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Catheter Precision, would fall away; and

h.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning Ra Medical Systems and Catheter Precision's Financial Projections*

38.  The Preliminary Proxy Statement fails to provide material information concerning financial projections for Ra Medical Systems and Catheter Precision provided by Ra Medical Systems and Catheter Precision management to the Board, Ladenburg Thalmann and/or Objective and relied upon by Objective in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

39.  Notably the Preliminary Proxy Statement reveals that as part of its analyses, Ladenburg Thalmann reviewed, "certain information relating to the historical, current and future

operations, financial condition and prospects of the Company and Catheter made available by the Company."

40. Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Ra Medical Systems and Catheter Precision management provided to the Board, Ladenburg Thalmann and/or Objective. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

41. With regard to the *Catheter Precision Projections* provided by Ra Medical Systems Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

    a. A definition for EBIT, as well as all underlying inputs, metrics, and assumptions used to calculate this metric; and

    b. A definition for EBITDA, as well as all underlying inputs, metrics, and assumptions used to calculate this metric.

42. The Preliminary Proxy Statement fails to include any material projection data for Ra Medical, preventing plaintiff from being able to determine the standalone value of the Company and, consequently, whether the Proposed Transaction is in his best interest.

43. The Preliminary Proxy Statement also fails to provide any material projection data for the Pro Forma Company, depriving Plaintiff of the ability to evaluate the financial prospects of the post-close company going forward.

44. The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

45. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this

information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

46. Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Ladenburg Thalmann's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Objective*

47. In the Preliminary Proxy Statement, Ladenburg Thalmann describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

48. With respect to the *Book value of Equity* analysis, the Preliminary Proxy Statement fails to disclose the following:

    a. The specific assets and liabilities used to conduct this analysis; and

    b. The expected payout projected in the event of a winding-down.

49. With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a. The specific inputs, metrics, and assumptions used to determine discount rates ranging from 23.0% to 27.5%;

    b. The specific inputs, metrics, and assumptions used to determine margins ranging from 45% to 55%; and

    c. The specific inputs, metrics, and assumptions used to determine long-term growth rates of 1.0% to 5.0%.

50. With respect to the *Guideline Public Company Method* the Preliminary Proxy Statement fails to disclose the following:

    a. The specific inputs, metrics, and assumptions used to determine NFY revenue multiples of 15.0x to 17.0x; and

    b. The specific inputs, metrics, and assumptions used to determine a control premium of 15.0%.

51. With respect to the *Guideline Transaction Method*, the Preliminary Proxy Statement fails to disclose the following:

    a. The specific guideline transactions analyzed;

    b. The value of each transaction compared;

    c. The specific inputs and assumptions used to determine NFY revenue multiples of 15.0x to 17.0x; and

    d. The specific inputs and assumptions used to determine a 0.91x time-based discount factor.

52. With respect to the combined analysis from all three valuations, the Preliminary Proxy Statement fails to disclose the following:

    a. The Company's net debt;

    b. The Company's net cash;

    c. The value of expected financing anticipated in this analysis;

    d. The value of additional liabilities derived from the merger; and

    e. The specific inputs, metrics, and assumptions used to determine a 13.0% discount rate.

53. The Preliminary Proxy Statement provides no material financial analyses of the Company.

54. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

55. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Ra Medical Systems stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

56. Plaintiff repeats all previous allegations as if set forth in full herein.

57. Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

58. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

59. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any

material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

60. The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

61. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

62. The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

63. The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

64. Plaintiff repeats all previous allegations as if set forth in full herein.

65. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in

connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

66. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

67. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Ra Medical Systems' business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

68. The Individual Defendants acted as controlling persons of Ra Medical Systems within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Ra Medical Systems to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Ra Medical Systems and all of its employees. As alleged above, Ra Medical Systems is a primary

violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 29, 2022  **BRODSKY & SMITH**

By: */s/ Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*